IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNA ABRAHAMSON,                                Civ. No. 05-6196-HO

        Plaintiff,                           ORDER

   v.

Commissioner of Social Security,

        Defendant.

    Plaintiff seeks review of the decision of the Commissioner denying her application for disability insurance benefits.

### Discussion

    Plaintiff contends that the administrative law judge (ALJ) erred by rejecting her testimony and certain physicians' opinions.  Where, as here, the plaintiff produces objective medical evidence of an impairment reasonably expected to produce symptoms, and there is no evidence of malingering, the ALJ may find the plaintiff incredible by providing specific, clear and convincing reasons supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Where, as here,

opinions of treating and examining doctors are contradicted by the opinions of other doctors, the ALJ may reject the opinions of the treating and examining doctors by providing specific and legitimate reasons supported by substantial evidence. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).

Plaintiff testified to an inability to work due to confusion and deficits in concentration and memory, and to feeling worthless and wanting to hide and avoid talking with people, resulting from anxiety and depression. (Tr. 543, 548). In support of his findings of moderate limitations from mental impairments[1] permitting work in prior employment as a packer, the ALJ cited a two month trip plaintiff took with her minor son to Ireland during the summer of 2003, the five day cruise plaintiff took with her boyfriend in October 2003, her boyfriend's report to examining psychologist Dr. Hennings that plaintiff goes dancing, dines out and attends her son's school activities, the

---

[1] In addition to certain physical limitations, the ALJ determined that plaintiff is moderately limited in the ability to understand, remember and carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods, moderately limited in the ability to work in coordination with or proximity to others without being distracted by them, moderately limited in the ability to make simple work-related decisions, moderately limited in the ability to interact appropriately with the general public and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and moderately limited in the ability to be aware of normal hazards and take appropriate precautions and in the ability to set realistic goals or make plans independently of others. (Tr. 22).

2 - ORDER

invalid results of two cognitive ability tests, psychiatric treatment records not supportive of the degree of symptoms alleged, and the opinions of state agency consultants that plaintiff experiences only moderate functional limitations from her mental impairments.  (Tr. 20-21).

Whether the ALJ permissibly rejected Dr. Heder's opinion, the reasons cited by the ALJ to reject plaintiff's testimony do not meet the clear and convincing standard in light of all the evidence.  Plaintiff reported to Dr. Arnold that she and her son had a good time and did well on their trip to Ireland, plaintiff's home country.  There is, however, no evidence that plaintiff's activities on this trip are inconsistent with her claimed inability to work.  Although the trip indicates that plaintiff overcame the demands of travel, this fact does not necessarily indicate the ability to meet the mental demands of competitive work day in and day out.   There is evidence that the demands of travel may have taken a toll on plaintiff.  Dr. Heder's chart notes reflect that plaintiff reported collapsing (apparently from fatigue) in the airport on the return trip. (Tr. 353).

Plaintiff testified that plaintiff's boyfriend gave her a five-day cruise for her birthday, plaintiff went on the cruise with her boyfriend, the cruise was supposed to be fun but plaintiff did not want to be there, plaintiff did not enjoy the

3 - ORDER

cruise because she does not drink and smoke and "party" like everyone else, and because she "just wasn't feeling up to power for a cruise." (Tr. 551-52).

In his report documenting the results of a May 17, 2004, exam, consulting psychologist Dr. Hennings noted boyfriend Jeff's report that plaintiff dines out and goes dancing with him, and that plaintiff usually attends her son's school activities. (Tr. 526). Dr. Hennings's report also discloses that Jeff corroborated plaintiff's reports of problems with concentration and memory. Jeff noted that plaintiff lost track of her car keys and phone, sometimes had difficulty following the plot of a movie, was able to drive safely but relied on road maps and easily became confused, would sometimes go for short walks with her eyes closed, and on one occasion called him on a cell phone and appeared lost, although plaintiff was "just one block away." (Tr. 526). Dr. Hennings's report further relates Jeff's report that activities of watching videos, dining and dancing with plaintiff are dependent on plaintiff's mood and health, plaintiff was often impatient and fatigued, Jeff saw plaintiff a couple times per week, and Jeff had only known plaintiff for three months and was not familiar with her daily routine. (Tr. 525-26).

While the ALJ permissibly determined that psychiatric treatment records do not support the degree of symptoms alleged,

4 - ORDER

the records are not clearly inconsistent with plaintiff's allegations of functional limitations from mental impairments precluding work.  While treating psychiatrist Dr. Arnold repeatedly noted plaintiff's acceptable appearance, good humor, euthymic or upbeat mood and tracking of conversations, he also wrote that he could not complete a mental status report because his contacts with plaintiff occurred in the office setting.  (Tr. 181).  Dr. Arnold wrote to Dr. Heder that plaintiff's complaints of concentration and comprehension impairment are most likely related to depression.  (Tr. 388).  A letter from a disability analyst refers to a letter of Dr. Arnold stating that plaintiff would not be able to work in a competitive job market.  (Tr. 182).  The parties do not point to any such letter by Dr. Arnold, and the court does not find it in the record.  Nevertheless, the letter described is not inconsistent with Dr. Arnold's global assessment of functioning (GAF) scale rating for plaintiff.  Dr. Arnold assigned a rating of "50-" on January 4, 1999, and "50" on March 5, 2003.  (Tr. 318-19, 398-406, 422).  A rating of 50 indicates "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Association: <u>Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision</u> 34, Washington, D.C., American Psychiatric Association, 2000 (<u>DSM-IV-TR</u>).

5 - ORDER

Invalid results from cognitive testing on two occasions are not clearly inconsistent with plaintiff's claims of limitations in her ability to, inter alia, concentrate and interact appropriately with others in a competitive work setting.  Nor do the cognitive test results clearly suggest that plaintiff is not truthful, as the Commissioner appears to concede.  See Def's Brief. at 8-9.  Dr. Hennings wrote in his May 17, 2004 report,

> I was not impressed that Anna was particularly focused
> on making a case for disability benefits or tort action
> with regard to her past accident.  Factitious disorder
> might be considered as there may be some reinforcement
> in maintaining a sick role complicated by her son's
> care needs.  It would appear that some of Anna's
> problems with fatigue and motivation may be related to
> chronic mood symptoms.  It may be that Anna does truly
> experience cognitive difficulties, but for other
> reasons has not participated in neuropsychological
> testing in a valid manner.  Examination of functional
> activities also suggests some inconsistencies.  It does
> appear, however, that Anna can participate in
> activities that are important to her.

(Tr. 527).  Reporting on a January 8, 2003 exam, psychologist Dr. Pritchford wrote,

> Anna seemed very straightforward and appeared to give
> forth her best effort.  Her interpersonal skills were
> very limited by her obvious depression and confusion.
> Her attention wandered.  She had trouble concentrating,
> persisting, or pacing her activities.  She was oriented
> for month, day, year, and day of the week.

(Tr. 278).  After reporting plaintiff's invalid IQ scores, Dr. Pritchford wrote that plaintiff's behavior seems quite consistent with what Dr. Pritchford saw during a 1998 examination and interview, plaintiff remains extremely agitated and confused, and

6 - ORDER

while plaintiff could not fully participate in IQ testing, Dr. Pritchford believes plaintiff's psychiatric problems are genuine and serious.  (Tr. 280).  Dr. Pritchford assigned a GAF rating of 40.  Id.  This rating indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  DSM-IV-TR 34.  The ALJ summarized Dr. Pritchford's report but did not indicate what weight, if any, he gave to Dr. Pritchford's conclusions.

As the ALJ found, the plaintiff in this case has a long history of mental impairments causing significant functional limitations affecting her ability to work.  The medical evidence regarding plaintiff's ability to work is contradictory.  While the ALJ is responsible for resolving ambiguities in the evidence and determining credibility, the evidence does not support clear and convincing reasons to disregard plaintiff's allegations that she is precluded from work due to her mental impairments.  Crediting plaintiff's testimony as true establishes that plaintiff meets the "B" criteria for Listings 12.04 and 12.06 of 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The court will therefore remand this case for an award of benefits.  See Smolen, 80 F.3d at 1272.  In light of this ruling, the court need not decide whether the ALJ erred by rejecting Dr. Heder's opinion that plaintiff cannot work due to persistent anxiety/depression,

7 - ORDER

decreased concentration and increased agitation, and continuing cervical spine and shoulder dysfunction (Tr. 491-92), the conclusion of the independent medical examiner that plaintiff can only occasional reach and finger, and the opinion of the state agency physician that plaintiff is limited to no more than frequent use of the hands.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed. This matter is remanded to the Commissioner for payment of benefits.

IT IS SO ORDERED.

DATED this __15th__ day of May, 2006.

                                                        s/ Michael R. Hogan
                                                  United States District Judge